[No. 12637. Department Two. December 9, 1915.]

J. B. HUNLEY, *Appellant*, v. B. F. INGLE. *Respondent.*[1]

APPEAL—BRIEFS—STRIKING. Motions to strike appellant's brief for failure to refer to the record, and to strike respondent's reply brief because of discourteous references, will be denied where the court has not been inconvenienced, the merits of the case were discussed, and the abuse complained of was not flagrant.

REFERENCE—ORDER—VALIDITY — APPEAL — HARMLESS ERROR. It is not prejudicial error to order a reference, after the trial had been entered upon by the court, where a reference might have been ordered in the first place, in view of the fact that the findings of the referee are only advisory and that there is a trial *de novo*, both in the lower court and on appeal.

CORPORATIONS—TRANSFER OF STOCK — SALE — FRAUD — EVIDENCE— SUFFICIENCY. Findings that a sale of corporate stock was not induced by actionable fraudulent representations concerning the financial condition of the company are sustained, where the testimony was conflicting, and it appears that the purchaser could, in a very short time, have ascertained the truth through his father, a stockholder, who advised the purchase and had access to the books, and must have known the truth as to the financial condition of the corporation; since the purchaser did not use diligence.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered October 20, 1914, upon findings in favor of the defendant, in an action for rescission, tried before the court and a referee. Affirmed.

*Morgan & Brewer* and *A. Emerson Cross*, for appellant.

*Martin F. Smith* and *Geo. D. Abel*, for respondent.

FULLERTON, J.—The Hoquiam Dairy & Ice Cream Company is a corporation organized and existing under and by virtue of the laws of the state of Washington. It has a capital stock of $10,000, divided into 100 shares of the par value of $100 each. On August 20, 1913, these shares were owned or controlled by one Peter Hunley and the respondent, B. F. Ingle, the former owning and controlling 50½ shares

[1]Reported in 153 Pac. 313.

and the latter 49½. On the day named, the respondent sold and transferred his shares to the appellant, J. B. Hunley, for a consideration of $2,900; $600 of which was paid in cash and the balance by promissory notes, four in number, one for the sum of $300, one for $666, and two for $667 each, becoming due at different dates. Later on, the appellant conceived that he had been defrauded in the transaction, and on November 6, 1913, instituted the present action to rescind the sale.

In his complaint he alleged that the respondent, prior to the sale, had the sole charge and management of the business of the corporation, the possession and charge of its books of account, and was fully aware of its financial condition, and, in order to induce the appellant to purchase the shares, made false and fraudulent representations to him concerning its financial condition; representing that the concern was solvent, was being operated at a profit, and had netted in the previous month more than $500 over and above its expenses. He further alleged that these representations were untrue; that the corporation was in fact insolvent; that it was being run at a loss; that, instead of netting $500 over and above its expenses for the month named, it was run at a loss during that month; that he was deceived by these representations and induced to thereby purchase the stock, whereas, had the truth been told him concerning the financial condition of the corporation, he would not have purchased the stock.

Issue was taken on the allegations of the complaint, and a trial was entered upon before the court sitting without a jury. After the trial had progressed for one day and the part of another, the court ordered the proceedings suspended before the court direct, ordered the testimony then taken to be transcribed, and made a reference of the cause to a referee, directing the referee to continue the hearing of the cause from the point where the court had left it, and make and report to the court his findings of fact and conclusions of law

on the issues involved in the cause. The referee appointed continued the hearing of the evidence, and at the conclusion thereof made findings of fact and conclusions of law favorable to the respondent. These were reported to the court, and, with certain minor exceptions, adopted by it. Judgment was thereafter entered accordingly, and this appeal prosecuted therefrom.

The appellant has moved in its reply brief to strike the respondent's brief, contending that it does not comply with the statute or the rules of the court in its references to the record. The respondent has made a counter motion to strike the reply brief because of discourteous references made therein to opposing counsel, to the referee and to the trial court. Neither of these motions will be granted. The method of making references to the record in the first brief asked to be stricken has caused the court no inconvenience, and as opposing counsel have replied to the merits without taking the ruling of the court upon their motion, we have the right to assume, we think, that they did not find the objection an insurmountable one. Moreover, the abuse complained of must be flagrant before the court would resort to the remedy asked. Ordinarily it would give the party in fault an opportunity to correct the error, and resort to the harsher remedy only in case of his refusal so to do. So with the motion to strike the appellant's brief. It, likewise, is not so flagrant as to deny the appellant the privilege of arguing his cause on its merits, and we feel that no good would result from striking the brief and allowing it to be refiled with the objectionable portion omitted.

The appellant first assigns error upon the order of the court directing a reference after it had itself entered upon the trial of the cause. But this, while somewhat irregular, we cannot regard as error warranting a new trial. The case was one which could properly have been referred in the first instance under § 370 of the Code (Rem. & Bal.), and a reference would have been unobjectionable at the time it was

made had the court directed the referee to commence anew.
But under our practice, the referee's findings on the facts do
not have the effect of a verdict of the jury. They are ad-
visory only, and the cause is triable *de novo*, both in the su-
perior court and in this court on the evidence returned by
the referee. The fact that all of the witnesses did not ap-
pear before the referee is not, therefore, of that importance
it would be were he the final arbiter of the facts. We are con-
strained to hold that no prejudicial error was committed by
the action of the court.

The evidence on the merits of the controversy was volumi-
nous. The appellant testified to a series of representations
which he claims were made to him by the defendant concern-
ing the financial condition of the corporation, which the se-
quel shows were untrue. The respondent, however, as emphat-
ically denies making the representations, and the circum-
stances surrounding the transaction seem to weigh as much
for the one as for the other. But conceding that the appel-
lant may have been misled as to the true financial condition
of the corporation, we think it was not altogether the fault
of the respondent. The appellant did not exercise that de-
gree of prudence in making the purchase that the law requires
of one under like and similar circumstances. The respondent
stood in no fiduciary relation towards him. Neither did he
use any artifice or device to mislead or deceive him. The par-
ties were dealing as strangers, at arm's length, and stood on
the same plane. The means of ascertaining the exact facts
were at the appellant's command. The Peter Hunley, who
owned the majority of the shares of stock in the corporation,
was the appellant's father. It was he who first suggested the
idea to the appellant of purchasing the stock. He took part
in the negotiations. Through his father, the appellant had
access to the books of the corporation, and could, in a very
short time, have ascertained the truth of any of the matters
concerning which he now claims he was deceived.

It is true the father claims that he was also deceived by the respondent's representations, but, clearly, he was in no position to claim that he was legally deceived thereby; that is, deceived in the sense that a cause of action would result to him therefor. In addition to being the majority stockholder, he was the vice president and secretary of the corporation, and one of its trustees, and took more or less part in its active management. That he knew that the business was not prospering is evidenced by the fact that he was called upon from time to time to furnish funds to carry it on, and he was, at the time of the purchase, personally obligated on the corporation's debts in a much larger sum than the appellant testified the respondent represented to him that the corporation then owed. There are other circumstances which seem to us to take the case from without the rule for which the appellant contends, but these we shall not discuss. In our opinion, the judgment of the lower court is in accord with the record. It will stand affirmed.

MORRIS, C. J., MAIN, and ELLIS, JJ., concur.